## MILLY *v.* SMITH.

A negro is mortgaged in the State of Kentucky, and afterwards, but before forfeiture of the mortgage, is carried by the mortgagor into the State of Illinois with a view to residence, from which State she is taken by the mortgagee and brought to Missouri, where she institutes an action for freedom against the mortgagee—held, that under the laws of Kentucky, which is the common law of England in this respect, the mortgagor is the legal owner of the slave; that he could emancipate her; and that the slave, by her residence in the State of Illinois, acquired a *sub modo* right to freedom by the ordinance of 87, which liberated her from the dominion of the mortgagor, and gave her a right to freedom until the mortgagee, by the means rendered necessary by the terms of the mortgage, again subjected her to slavery.

WASH, J., dissenting.

ERROR from the Circuit Court of St. Louis county.

M'GIRK, C. J., delivered the opinion of the Court.

This was an action on the part of Milly for freedom, under the ordinance of Congress of 1787, for the government of the North Western Territory. There was a verdict and judgment against the plaintiff in the Court below. The facts of the case appear to be, as found by a special verdict, that one David Shipman, then residing in the State of Kentucky, on the 17th of October, 1826, made a deed to Smith, the defendant in error, by which Shipman, among other things, granted, bargained and sold the plaintiff, Milly, as a slave to Smith, to have and to hold her, together with her increase, to said Smith and his heirs forever, subject to this condition, to wit: that whereas the above named Shipman in indebted to the Commonwealth's Bank of Kentucky in about the sum of $800, for which the said Stephen Smith is bound as security, and the said Shipman is also indebted to the heirs of William Cooper in about the sum of $600, for which the said Smith is bound as security in a replevin bond, (also Shipman is indebted to other persons in several other large sums, for which Smith is also bound as security,) and also said Shipman is indebted to Smith himself in about $200.

(172) Now the lands, (several tracts of land also sold or mortgaged,) slaves and chattels aforesaid, with their future increase, are hereby declared to be given in mortgage to secure and indemnify and pay the said Smith as security, and in his own right, in the several sums of money hereinbefore enumerated and mentioned, and it is hereby expressly understood and agreed upon between the parties, that the said Shipman may and is hereby permitted to retain and keep the possession of said land, slaves and chattels, with their future increase, and to have the use thereof, subject, however, to the lien hereby created; and should said Shipman, or the said Smith, at any time hereafter be able to effect a sale of the lands, slaves, &c., or any part thereof at their fair value, and apply the proceeds thereof to the payment of the liabilities and claims herein enumerated, or to the discharge of a judgment in favor of the Farmers and Mechanics' Bank of Shelbyville against said Shipman, that in such

case, the said Shipman and Smith will consent to said sale, and make title to the property so sold, in which title said Smith will release the lien hereby created. Witness our hands, &c. It is farther found, that soon after the execution of the said instrument, called a mortgage, Shipman, who was then greatly embarrassed in his pecuniary circumstances, took the said Milly, with several other of his slaves, and secretly, with intent to withdraw himself and property from Smith and other creditors, ran away with them to the State of Indiana, and there, in Jefferson county, executed a deed of emancipation in due form of law to the said Milly, she being present, which deed emancipated Milly with one other in the mortgage mentioned.

It is further found that Shipman then carried Milly to Peoria county, in the State of Illinois, where he then settled and resided, with an intention of residing there permanently; hired a farm, and declared his intention of residing there permanently, and has ever since resided there from November, 1826, till May, 1827, at which latter time said Smith came there and took Milly secretly and against her consent, and the consent of Shipman, and brought her to St. Louis, claiming her as his slave, and holding her as his slave, when and where this suit for freedom commenced: and the Court further finds, that after the deed of emancipation was executed, Smith paid as security for Shipman to the Sheriff, who had executions against him therefor, the claims of Levin Cooper, and the claim of Polly Rice, mentioned in the instrument of mortgage, amounting to the sum of sixteen hundred and thirty-four dollars, and (173) that the executions issued after Shipman had carried Milly to Indiana as aforesaid. It is further found that Smith never had possession of Milly till the month of May, 1827, when he went to Illinois and seized her and brought her to St. Louis, aforesaid, and that he claims her as a slave under the deed of mortgage, and that Shipman had, before the mortgage and during several years, had and held Milly as a slave. It is further found, that the deed of mortgage was executed in Shelby county, in Kentucky, where Smith and Shipman both resided, and that Milly was by Shipman then held as a slave.

The jury, or Court sitting as a jury, also find several statutes of Kentucky, the result of which is, that, for purposes of descent, slaves are real property, and that for the purposes of contract and execution they are personalty. The Court also find, that the common law of England is and was at the time of making this mortgage, the law of Kentucky.

Upon this state of facts and law, the question submitted to us is, whether Milly is by law entitled to her freedom? When we only look to the facts in this case, we see on one side a man largely indebted, hiding his property, and in fact destroying it, to prevent his creditors from reaping any benefit therefrom, and in this case, Shipman has been base enough to emancipate the slave to injure and ruin his security. We feel disposed to view him in a light but little below that of a felon. But there are two sides to every question: here is also the case of a person claiming the benefit of the ordinance of Congress of 1787, for the government of the North-Western Territory, which declares, that in that country there shall be neither slavery nor involuntary servitude. It is also a matter not to be forgotten, that Mr. Smith, perhaps once, that is, when he took the mortgage, had it in his power to have made such a contract that Shipman could not have had the possession and management of the property. Having premised this much, I will proceed to investigate the most prominent points made in the case :—

Milly *v.* Smith.

First, it is insisted that if Shipman was the legal owner of the slave at the time he brought Milly to Illinois, to reside there permanently with her, she became free in virtue of the ordinance.

This doctrine is conceded by Smith's counsel, and it has been so decided in repeated instances by this Court.

The next and main point in the case is, was Shipman or Smith the legal owner of Milly on the execution and by virtue of the mortgage? When this same case was (174) before this Court on a former occasion, the Court decided that Shipman was the legal owner of the slave according to their view and construction of the mortgage. Nothing new now appears on the record except that it now appears that the common law of England was the law in force in Kentucky at the time this mortgage was made: by that law, then, we are to decide the case. In Kentucky, slaves, for the purpose of contracts and conveyance, are chattels.

It is insisted by Smith's counsel that here there is a complete sale of the slave, and that what comes afterwards in the condition, amounts only to covenants which either party may or may not regard as he chooses, subjecting himself, however, to an action of covenant broken, and that Smith chooses to take possession of the slave, did no more than he might lawfully do. On the other side it is agreed that this instrument, when taken altogether, amounts only to a lien created by the act of the parties. That Shipman is the legal owner of the slave until it shall happen that Smith has to pay the debts or a portion of the debts in the mortgage mentioned; and also, until Smith shall afterwards foreclose this mortgage or obtain judgments in due course of law against Shipman, for the money Shipman owed him, and for that which he paid for him, and shall in such case subject the property to his lien by foreclosure, or by a bill in chancery, and that until this is done, Milly is free *sub modo* and free forever as to Shipman. When the argument in this case was first opened, I felt strongly inclined to doubt the legality of the former opinion of this Court, delivered when this case was up before. But I feel myself at last constrained to affirm that opinion.

The question is emphatically asked by Smith's counsel, could Shipman in Kentucky have legally emancipated the slave after making the mortgage? If this question can be answered satisfactorily in the affirmative, then it is admitted that Milly is free *sub modo.* I am of opinion that Shipman could lawfully do so. The reasons I will freely give. I believe that the conditions are as much a part of the instrument as the granting part itself is, and that they create qualifications, limitations, and restrictions, some of which are inconsistent with the idea that Smith could take possession of the property when he might choose to do so; and are inconsistent with the idea of legal ownership. The fact that Shipman was to have indefinite possession and perpetual use, is inconsistent with the end and use of ownership. But at all events, Shipman could not be considered to have a less interest than a lessee for years, see *Pow.* (175) *on Mortgages,* 206,–7, where the Court make a distinction between a case where the covenant is that the mortgagee will not hinder in the enjoyment, and where the covenant is that the mortgagor shall enjoy. In the latter, held to be lessee for years, in the former, tenant at will. In this case the covenant is, that Shipman shall enjoy indefinitely. And again in the same book, 221,–2, Mr. Powell says, a mortgagor in possession gains a settlement, because the mortgagee, notwithstanding the form has but a chattel, the mortgage being only a pledge for security to him for his money, and the original ownership of the land still residing in the mortgagor, subject only

to the legal title of the mortgagee so far as such title is requisite to the end of security.

In the same book, 225, 226, it is said the estate of the mortgagee until forfeiture, still continues as it was at common law before the interference of Courts of Equity ; he is entitled to an estate as tenant in mortgage, in fee or for term of years, subject to any agreement made between mortgagor and mortgagee relative to possession, and defeasible at law on the performaace of the condition This latter authority only shows that so far as respects possession and the like, the mortgagee is not at liberty to redress himself contrary to his covenant. Many authorities might be cited to show that for many and important purposes, the mortgagor is considered to be the legal owner. Th'is the mortgagor can do no act to affect the mortgagee's lien, nor can the mortgagee do any act to defeat the mortgagor's equity of redemption. But all incumbrances subsequently created by the mortgagor are to yield to the mortgagee's right to foreclose and have his money. Now in all such cases, I take the law to be, that the cases are good when the mortgagor's possession is indefinite by covenant, at least till the time has arrived that the mortgagee can exercise his right. In this case when has the mortgagee a right to possession ? The possession and use are gone from him by covenant indefinitely, and when he pays the debts and then enforces his lien by a sale of the slave, if he should be the purchaser, then he may possess and not before. In this case, I take the law to be that Milly is free as to Shipman forever. For by the act of residence in Illinois that result is produced, and that as to Smith she has the same indefinite right to liberty that Shipman had to the possession of her, and until the lien is enforced by some mode known to the law, she ought to enjoy her freedom. Now if Smith should delay this for twenty years after his right to do so has arisen, then the presumption would arise that he had no (176) demand, and her right to her freedom would be unconditional. Upon the whole matter, I am of opinion that Milly is free *sub modo,* and that the judgment of the Circuit Court ought to be, and is reversed with costs, and such judgment given as the Court below ought to have given, which is, that Milly is free.

WASH, J., dissenting.

I dissent from the opinion of the Court above delivered. I think the weight of authority is, that the mortgagee is the legal owner. Various authorities have been cited on both sides for and against the position. Most clearly the mortgagor is not the full owner, he is at most but the qualified owner. In this case Shipman was the qualified owner for specific purposes, and had no right to emancipate the plaintiff in Kentucky or elsewhere ; indeed, it seems to be conceded on all hands, that Shipman could not have emancipated Milly by his express deed, and why give indirect and fraudulent efforts and implied assent more effect than his deed could have ? I incline to consider the plaintiff in the light of a purchaser from Shipman, with a full knowledge of Smith's lien.